1  LATHAM & WATKINS LLP
       Richard G. Frenkel (State Bar No. 204133)
2      *rick.frenkel@lw.com*
   140 Scott Dr.
3  Menlo Park, CA 94025
   Tel:  650-328-4600
4  Fax:  650-463-2600

5  LATHAM & WATKINS LLP
       Bradley A. Hyde (State Bar No. 30145)
6      *bradley.hyde@lw.com*
   650 Town Center Dr., 20th Floor
7  Costa Mesa, CA 92626
   Tel:  714-540-1234
8  Fax:  714-755-8290

9  LATHAM & WATKINS LLP
       Maximilian A. Grant (*Pro hac vice* to be
10 filed)
       *max.grant@lw.com*
11 555 Eleventh Street, NW Suite 1000
   Washington, D.C. 20004-1304
12 Tel:  202-637-2200
   Fax:  202-637-2201

13

14 *Attorneys for Non-Parties Amphenol*
   *Corporation and Amphenol Antenna*
   *Solutions, Inc.*

15

16

17                UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20 In re:  SUBPOENAS TO TESTIFY AT A     | Misc. Case No. _____
   DEPOSITION IN A CIVIL ACTION
21                                       | **NON-PARTIES AMPHENOL**
                                         | **CORPORATION AND AMPHENOL**
22 Underlying Case: *Fractus, S.A. v. AT&T* | **ANTENNA SOLUTIONS, INC.'S NOTICE**
   *Mobility LLC, et al.*, No. 2:18-cv-00135 | **OF MOTION AND MOTION TO QUASH**
23 (E.D. Tex.)                           | **SUBPOENAS TO TESTIFY AT A**
                                         | **DEPOSITION IN A CIVIL ACTION**
24                                       | Date:   TBD
                                         | Time:   TBD
25                                       | Judge:  TBD
                                         | Dept.:  TBD
26

27

28

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

FILED
MAR 22 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

CV 19 80072 MISC  JSC

ORIGINAL

FAXED

1
           **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA**

2
      PLEASE TAKE NOTICE that as soon as counsel may be heard in the United States District

3
Court for the Northern District of California, San Francisco Division, Non-Parties Amphenol

4
Corporation and Amphenol Antenna Solutions, Inc. (collectively, "Amphenol") will, and hereby

5
do, move this Court, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, for an

6
order quashing the subpoenas that Fractus S.A. ("Fractus" or "Plaintiff") served in the underlying

7
action *Fractus S.A. v. AT&T Mobility LLC, et al.*, No. 2:18-cv-00135 (E.D. Tex.) on March 4 and

8
8, 2019 ("Subpoenas").

9
      This Motion is based upon this Notice of Motion and Motion; the following Memorandum

10
of Points and Authorities in Support thereof; the Declarations of Rick Frenkel and Justin Riek, and

11
the pleadings and papers on file with the Court in the underlying action.

12
              **STATEMENT OF REQUESTED RELIEF**

13
      The aforementioned non-parties respectfully request that this Court quash Fractus's

14
Subpoenas because the discovery sought: (1) violates the geographic limitations of Federal Rules

15
of Civil Procedure 45(d)(3)(ii) and (iv) because the corporate representatives do not reside, are not

16
employed, and have not regularly transacted business in the District; and (2) because Fractus's

17
serial, repetitive Subpoenas create an undue burden on non-party Amphenol.

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................... 3

    A.    Amphenol's Full Compliance with Fractus's Subpoena ....................... 4

    B.    Fractus's January 2019 Request That Amphenol Redo Its
        Production ............................................................................................ 6

    C.    The Parties Meet and Confer ................................................................ 7

    D.    Fractus Serves Three Additional Subpoenas ....................................... 8

III.  LEGAL STANDARD...................................................................................... 8

    A.    The Geographic Limits of Rule 45 ....................................................... 8

    B.    Discovery Against Non-parties............................................................. 8

    C.    Issuing Party's Duty to Avoid Undue Burden or Expense ................... 9

IV.   ARGUMENT ................................................................................................. 11

    A.    Fractus's Subpoenas Must Be Quashed Under FRCP 45(d)(3)(ii)
        Because Amphenol's Corporate Representatives Do Not Reside,
        Work, or Regularly Transact Business in the District ......................... 11

    B.    Fractus's Requests for Production Are Improper ................................ 12

        1.    The Second Set of Document Requests and Deposition
            Topics Are Irrelevant, Duplicative, Unreasonably
            Cumulative, and Unduly Burdensome ..................................... 13

        2.    Fractus Has Imposed Significant Cost on Non-party
            Amphenol.................................................................................. 15

        3.    The Subpoenas Seek Information That Fractus Could More
            Easily Get from Defendants...................................................... 15

    C.    Fractus Has Failed to Take Reasonable Steps to Avoid Imposing
        Undue Burden and Expense on Non-party Amphenol ........................ 16

V.    CONCLUSION............................................................................................... 18

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

## TABLE OF AUTHORITIES

Page(s)

### CASES

*ASUS Computer Int'l v. Micron Tech. Inc.*,
  Case No. 14-CV-00275 JST (NC), 2014 WL 12625461 (N.D. Cal. April. 21,
  2014) .................................................................................................................................16

*ATLC, Ltd. v. Eastman Kodak Co.*,
  No. 6:06-CV-416-ORL-19KRS, 2006 WL 3422413 (M.D. Fla. Nov. 28, 2006)..............10, 17

*Chevron Corp. v. Donziger*,
  No. 12-MC-80237 NC, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ...................................10

*Compaq Comput. Corp. v. Packard Bell Elec., Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995).............................................................................................10

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998)......................................................................................................9

*Dart Indus. Co. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) .....................................................................................................9

*Fractus, S.A. v. AT&T Mobility LLC*,
  No. 2:18-cv-00135-JRG (E.D. Tex.) ..........................................................................................3

*Fractus, S.A. v. Sprint Communications Company, L.P., et al.*,
  No. 2:18-cv-00136-JRG (E.D. Tex.) ..........................................................................................3

*Fractus, S.A. v. T-Mobile US, Inc., et al.*,
  No. 2:18-cv-00137-JRG (E.D. Tex.) ..........................................................................................3

*Fractus, S.A. v. Verizon Communications Inc., et al.*
  (Case No. 2:18-cv-00138-JRG) ..................................................................................................3

*Free Stream Media Corp. v. Alphonso Inc.*,
  No. 17-CV-02107-RS (KAW), 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017) ........9, 13, 14, 15

*Fujikura Ltd. v. Finisar Corp.*,
  No. 15-MC-80110-HRL (JSC), 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ........................11

*Gonzales v. Google, Inc.*,
  234 F.R.D. 674 (N.D. Cal. 2006).........................................................................9, 10, 13, 14

*Greene v. Drobocky*,
  No. 1:12-CV-00078-TBR, 2014 WL 12726539 (W.D. Ky. Aug. 27, 2014)...........................11

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993).............................................................................................8, 10

*Heat & Control, Inc. v. Hester Industries, Inc.*,
  785 F.2d 1017 (Fed. Cir. 1986)................................................................................................13

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

ii

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1  *Katz v. Batavia Marine & Sporting Supplies, Inc.,*
2      984 F.2d 422 (Fed. Cir. 1993)..................................................................................9

3  *Leader Techs., Inc. v. Facebook, Inc.,*
       No. C10-80028-MISC JW (HRL), 2010 US Dist. LEXIS 24818 (N.D. Cal.
4      March 2, 2010)................................................................................................15

5  *Miller Marital Deduction Tr. by & through Miller v. Estate of DuBois,*
       No. 2:16-CV-01883-SB, 2018 WL 1023200, slip op. (E.D. Cal. Feb. 21, 2018)....................13

6  *Nidec Corp. v. Victor Co. of Japan,*
7      249 F.R.D. 575 (N.D. Cal. 2007)..........................................................................15, 16

8  *Optimize Tech. Sols., LLC v. Staples, Inc.,*
       No. 14-MC-80095-LHK (HRL), 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) ...................10

9  *Perez v. Progenics Pharm., Inc.,*
       No. 10-CV-08278 (LAP), 2015 WL 4111551 (S.D.N.Y. June 24, 2015) ...........................11
10

11 *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.,*
       No. 05 CIV.6298(PKC), 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006)................................10

12 *Price Waterhouse LLP v. First Am. Corp.,*
       182 F.R.D. 56 (S.D.N.Y. 1998) ...........................................................................11
13

14 *Solarex Corp. v. Arco Solar, Inc.,*
       870 F.2d 642 (Fed. Cir. 1989)................................................................................8

15 *Third Degree Films, Inc. v. Does 1-178,*
       No. C 12-3858 EMC (MEJ), 2012 WL 12925674 (N.D. Cal. Dec. 6, 2012) ...........................9
16

17 *United States v. Columbia Broad. Sys., Inc.,*
       666 F.2d 364 (9th Cir. 1982) ...............................................................................9

18 *Visto Corp. v. Smartner Info. Sys., Ltd.,*
       06-80339 MISC RMW, 2007 WL 218771 (N.D. Cal. Jan. 29, 2007)....................................15
19

20 *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC,*
       No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013)......................................10

21                                    **RULES**

22 Fed. R. Civ. P.
       26.......................................................................................................................10
23     26(a)(2)(C)(i) ...................................................................................................10
       26(b).................................................................................................................9
24     45....................................................................................................8, 9, 11
       45(c)(1)(A).........................................................................................................8
25     45(c)(3) ...........................................................................................................10
       45(c)(3)(ii)...................................................................................................3, 4, 11
26     45(c)(3)(iv).......................................................................................................11
       45(d)(1) .....................................................................................................*passim*
27     45(d)(2)(ii).......................................................................................................8
       45(d)(3)(ii).................................................................................................11, 12
28     45(d)(3)(iv)..................................................................................................8, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On April 4, 2018, Fractus, a Spanish licensing company, sued the four major cellular carriers (AT&T, Sprint, T-Mobile, and Verizon) in the United States District Court for the Eastern District of Texas, alleging infringement of 10 different patents.  On June 18, 2018, as required by the Texas court, Fractus served its infringement contentions, alleging that thousands of antenna models incorporated into defendants' networks (a small percentage of which included approximately 100 different Amphenol antenna models), infringed.

On July 25, 2018, Fractus subpoenaed non-parties Amphenol Corporation (based in Connecticut) and Amphenol Antenna Solutions, Inc. (based in Illinois), seeking detailed discovery on the "multiband" antennas purportedly used by the Defendants as part of the infringing instrumentalities, as alleged in Plaintiff's infringement contentions.  The Subpoenas purported to require compliance in San Francisco, California.  Fractus provided Amphenol with a list of accused Amphenol antenna models on August 2, 2018, and Amphenol timely served its objections to the Subpoenas on August 31, 2018.  Fractus did not respond to Amphenol's objections, including Amphenol's objection directed to the definition of "multiband" antennas.  Fractus also did not respond to Amphenol's offers to meet and confer regarding the scope of certain requests for production.  Amphenol completed its (voluminous) rolling production of responsive documents by November 13, 2018, using the list of antennas provided by Fractus on August 2.  At that point, Amphenol's compliance with the Subpoenas was complete.  Amphenol nonetheless made a small supplement of its production in December 2018, based on Fractus's request.

On January 9, 2019, Fractus disclosed a revised—mostly new and different—list of accused products and demanded that Amphenol redo its production.  Fractus claimed that the newly accused antennas were "omitted" from Amphenol's prior productions.  But just eight antennas on the revised list overlapped with those in Fractus's June 2018 infringement contentions, and many of the newly identified antennas were "single band" antennas, not the "multiband" antennas that were the subject of Fractus's July 2018 subpoena.  On January 11, 2019, less than 48 hours after asking Amphenol to redo its production and while Amphenol was considering that

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1  request, Fractus accused Amphenol's completed and previously unobjected-to production of being

2  deficient.  Fractus contended that Amphenol's November 2018 production was deficient because

3  Amphenol failed to produce technical documentation for antennas that Fractus first identified to

4  Amphenol on January 9, 2019, and because Amphenol's production was limited to the "multiband"

5  antennas set forth in the July 2018 subpoenas.

6       Fractus and Amphenol met and conferred twice by phone.  On January 18, 2019, Fractus

7  represented that the newly identified antennas were "in the case."  That claim was false.  As of

8  January 18, 2019, the newly identified antennas had not been accused in the Texas litigation.  The

9  parties conferred again on January 24, 2019, but the newly identified antennas were still not

10  formally accused.  Fractus first moved for leave to amend its infringement contentions to add the

11  newly identified antennas on January 30, 2019, and the court did not rule on the motion until

12  yesterday – March 21, 2019.  Before the Texas court's decision on Fractus's motion, Amphenol

13  could not fairly evaluate Fractus's facially burdensome request that Amphenol redo its previously

14  completed production.

15       On February 25, 2019, while its motion for leave to amend was still pending in the

16  Texas court, Fractus filed a motion to compel in the District of Connecticut.  In addition to

17  Fractus's request that the court order Amphenol to redo its production to cover the revised and

18  belatedly newly identified list of newly accused products, Fractus also sought certain

19  element-specific technical information that is absent from its Subpoenas.  In other words, Fractus's

20  motion not only asked the court to compel non-parties to redo a voluminous production, it asked

21  the Court to broaden the scope of the production beyond that specified in the original Subpoenas.

22  Fractus did not explain why the thousands of technical files that Amphenol already produced are

23  insufficient to satisfy its original request.  Fractus further requested that the court order Amphenol

24  to produce certain sales and marketing documents, agreements, and communications that Fractus

25  could obtain, and in some instances has already obtained, from the Defendants.  Finally, Fractus

26  requested that the court order Amphenol to search the entirety of its communications for all time

27  for "mentions" of Fractus or its patents, based only on rank speculation that such non-privileged

28  communications may exist.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1    On March 4, 2019, while its motion for leave to amend and its motion to compel were

2  pending, Fractus served Amphenol Corporation and Amphenol Antenna Solutions with two more

3  subpoenas, requesting the same detailed technical, financial, and marketing documents and

4  testimony sought by the July 2018 subpoenas, but now with a different list of antennas.  A few

5  days later, on March 8, 2019, Fractus served a third round of subpoenas on Amphenol Antenna

6  Solutions, seeking additional details on the same subject matter as the requests in its March 4, 2019

7  Subpoenas, and its motion to compel.  Just yesterday, on March 21, 2019, eight (8) months after

8  Fractus's original subpoenas to Amphenol, and weeks after Fractus's second and third round of

9  subpoenas and motion to compel to Amphenol, the Texas court granted Fractus leave to amend its

10  infringement contentions.

11    The Court should quash Fractus's untimely, burdensome, and legally improper March 4

12  and March 8 subpoenas for two independent reasons.  First, Amphenol's corporate representatives

13  do not reside, are not employed, and have not regularly transacted business in this judicial district,

14  as required by Federal Rules of Civil Procedure 45(d)(3)(ii) and (iv).  Second, Fractus's Subpoenas

15  should be quashed for creating an undue burden on non-party Amphenol, as described in further

16  detail below.

17  **II.    FACTUAL BACKGROUND**

18    Amphenol Corporation, and its wholly owned subsidiary, Amphenol Antenna Solutions,

19  Inc., manufacture base station antennas, typically sold to cellular carriers to be incorporated into

20  those carriers' networks.  Amphenol Antenna Solutions resides in Illinois and is headquartered in

21  Rockford, Illinois.    Amphenol Corporation resides in Connecticut and is headquartered in

22  Wallingford, Connecticut.

23    On April 4, 2018, Fractus, a Barcelona-based Spanish licensing company, sued the four

24  major cellular carriers (AT&T, Sprint, T-Mobile, and Verizon) in the United States District Court

25  for the Eastern District of Texas.[1]  Fractus alleged that the carrier Defendants infringe 10 Fractus

26

27  [1] *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-cv-00135-JRG (E.D. Tex.) ("*AT&T Mobility*"); *Fractus, S.A. v. Sprint Communications Company, L.P., et al.*, No. 2:18-cv-00136-JRG (E.D. Tex.) ("*Sprint Commc'ns*"); *Fractus, S.A. v. T-Mobile US, Inc., et al.*, No. 2:18-cv-00137-JRG (E.D. Tex.) ("*T-Mobile*"); *Fractus, S.A. v. Verizon Communications Inc., et al.* (Case No. 2:18-cv-00138-

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1  patents by using certain third-party antennas, including antennas made by Amphenol. *See, e.g.,*

2  *AT&T Mobility*, Case No. 2:18-cv-00135, Dkt. No. 1.  On June 18, 2018, in compliance with the

3  court's Docket Control Order and the local patent rules, Fractus served its original infringement

4  contentions alleging that thousands of antenna models incorporated into Defendants' networks (a

5  small percentage of which included approximately 100 different Amphenol antenna models),

6  infringed.  *AT&T Mobility*, Case No. 2:18-cv-00135, Dkt. No. 78.  The deadline for substantial

7  completion of document production was February 8, 2019, and fact discovery closes April 15,

8  2019.  *Id.*

9  ### A.    Amphenol's Full Compliance with Fractus's Subpoena

10  On July 25, 2018, Fractus served two identical document subpoenas on non-parties

11  Amphenol Corporation and Amphenol Antenna Solutions, Inc., requesting documents sufficient

12  to show, among other things, "each ***multiband*** antenna sold in the United States (including all

13  territories thereof) since the first date of sale of any such antenna, including the model number, all

14  purchaser(s) … date of sale, sale price … cost of goods sold, and gross profit." (Declaration of

15  Rick Frenkel ("Frenkel Decl."), Ex. A, July 25, 2018 Document Subpoena, at Request No. 1.)[2]

16  The Subpoena also requested technical information sufficient to show physical characteristics of

17  each multiband antenna, such as its arrangement, structure, size, spacing, shape, frequency ranges,

18  polarizations, gain, radiation and impedance patterns, and operability with various networks.

19  (*Id.*, Ex. A, July 25, 2018 Document Subpoena, at Request No. 2.)[3]  The Subpoenas purport to

20  require compliance at a San Francisco address located in the Northern District of California.

21  (*Id.*, Ex. A, July 25, 2018 Document Subpoena, at 1.)

22

23

---

24  JRG) ("*Verizon Commc'ns*").  These four cases were consolidated under lead case 2:18-cv-00135
    by District Court Judge Rodney Gilstrap on May 29, 2018.  *AT&T Mobility*, Dkt. No. 19.

25  [2] All emphasis added unless otherwise noted.

26  [3] The subpoena requested non-party Amphenol's sales and marketing communications concerning
    the multiband antennas (Request No. 3), all contracts and agreements with the carrier Defendants

27  (Request No. 4), revenue (Request No. 5), patent licenses concerning the multiband antennas
    (Request No. 6), indemnification (Request No. 7), and any communications relating to Fractus

28  and/or the patents-in-suit (Request No. 8).  (Frenkel Decl., Ex. A, July 25, 2018 Document
    Subpoena, at Request Nos. 3–8.)

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

4    NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1    Shortly thereafter, on August 2, 2018, Fractus provided Amphenol with a list of nearly 100

2    accused Amphenol antennas that were identified in its infringement contentions served pursuant

3    to the Eastern District of Texas Patent Local Rules. (*Id.*, Ex. B, Michael Ng 8/2/19 e-mail to Rick

4    Frenkel.)

5    On August 31, 2018, Amphenol served its responses and objections to the Subpoena.

6    Amphenol objected to the phrase "multiband base station antenna" as vague and ambiguous, and

7    stated that it would apply its understanding of this phrase in interpreting the scope of the requested

8    documents. (*Id.*, Ex. C, at Responses 1, 2.) Amphenol also objected to various categories of

9    requested documents that were overly broad, and that Fractus could obtain from the carrier

10   Defendants. (*Id.*, Ex. C, at Responses 3–5, 8.) Amphenol offered to meet and confer regarding

11   the scope of certain requests for production, but Fractus did not respond to Amphenol's offer, nor

12   any of its objections. (*Id.* at ¶ 6.)

13   Amphenol diligently collected and produced over 37,000 documents relating to the

14   antennas identified on the list of accused products that Fractus provided to Amphenol. (*Id.* at ¶ 7.)

15   The technical documents produced by Amphenol include product data sheets, schematics, and

16   detailed pattern files that describe, among other things, the polarizations, gain, radiation patterns,

17   impedance, and electrical downtilt capabilities of the accused antennas. (*Id.* at ¶ 8.) Amphenol

18   completed its rolling production on November 13, 2018. (*Id.* at ¶ 7.) In December 2018, Fractus

19   sent a request to Amphenol for certain model number guides and additional metadata for

20   Amphenol's production, which Amphenol investigated and provided without objection. (*Id.*, Ex.

21   D, December E-mail Chain.) Despite having initiated a request to Amphenol for additional

22   information and documents, Fractus did not express any concerns about the scope of Amphenol's

23   production. (*Id.*) Fractus did not identify any newly accused Amphenol products, and never so

24   much as suggested that the scope of the accused Amphenol antennas was being reconsidered or

25   may change. (*Id.*)

26

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1          **B.      Fractus's January 2019 Request That Amphenol Redo Its Production**

2          On January 9, 2019, nearly two months after Amphenol had completed its production,

3    Fractus, for the first time, disclosed a revised list of antennas. (*Id.*, Ex. E, Luke Burton 1/9/19

4    e-mail to Rick Frenkel). Instead of accurately characterizing these products as newly accused,

5    Fractus wrongly claimed that the newly accused antennas were "omitted" from Amphenol's prior

6    productions.[4]  However, only eight antennas overlapped with those in Fractus's infringement

7    contentions and over 80% were not identified in Fractus's infringement contentions. (*Id.* at ¶ 12.)

8    Worse, many of the newly identified antennas were in fact "single band" antennas, a very distinct

9    technology from the "multiband" antennas that were the subject of Fractus's Subpoenas. (*Id.*)

10   Nevertheless, Amphenol promptly began to investigate Fractus's request. (*Id.* at ¶ 13.)

11         Less than 48 hours after issuing its request, and without any additional notice, Fractus

12   e-mailed to (wrongly) accuse Amphenol's previously unobjected-to production of being deficient.

13   (*Id.*, Ex. F, Luke Burton 1/11/19 e-mail to Rick Frenkel.) Fractus's e-mail alleged that Amphenol's

14   November 2018 production was deficient because it failed to include technical documentation for

15   antennas that Fractus first identified to Amphenol on January 9, 2019, and failed to include certain

16   single band antennas—which had never been previously identified as potentially relevant or

17   responsive. (*Id.*) Fractus's deficiency e-mail is problematic for two additional reasons. First, as

18   Fractus admitted on the subsequent meet-and-confer, Fractus's deficiency notice identified entire

19   categories of documents that its Subpoena does not seek.[5]  Second, Fractus identified certain

20   categories of documents as "deficient" even though Amphenol had produced the requested

21   documents, indicating Fractus had failed to competently review Amphenol's production.[6]

22   _____

23   [4] Fractus did not characterize its list as a revision, nor did it provide any infringement contentions
     at that time. *See generally* Frenkel Decl., Ex. E, January 9, 2019 E-mail. Fractus first provided
     an incomplete sample of three infringement charts after the parties' first meet-and-confer on
24   January 18, 2019, and only after Amphenol insisted on receiving them. (*Id.* at ¶ 11.)

25   [5] *Compare Id.* at Ex. E (deficiency notice seeking asked for "industry reports and analyses" and
     "documents reflecting Amphenol's supply chain") *with* Ex. A, July 25, 2018 Subpoena.

26   [6] For example, Fractus identified "contracts with the carrier defendants" as a category for which
     Amphenol had not produced documents, when those contracts were the very first documents
27   Amphenol produced in response to Fractus's Subpoenas. (*Id.* at ¶ 15.) Further, during the
     discussion of another category, "documents reflecting costs of installation, maintenance, service
28   and repair" of the accused antennas, it became apparent that Fractus had never even reviewed

1

### C.    The Parties Meet and Confer

2    Fractus and Amphenol met and conferred on January 18 and 24, 2019.  (*Id.* at ¶ 13.)

3  On January 18, 2019, Fractus represented that the newly identified antennas were "in the case."

4  (*Id.* at ¶ 17.)  This representation was false.  As of January 18, 2019, the newly identified antennas

5  had not been formally accused in the litigation.  (*Id.* at ¶ 18.)  Fractus first identified these

6  newly-accused    antennas    in    infringement    contentions    served    on    Verizon    Wireless

7  January 16, 2018—*five days* after sending its deficiency notice to Amphenol.[7]  (*Id.* at ¶ 19.)

8  Fractus did not move for leave to amend its infringement contentions until January 30, 2019.

9  (*AT&T Mobility*, Case No. 2:18-cv-00135, at Dkt. No. 150.)  Fractus's motion for leave to amend

10  was not granted for another *two months*, yesterday.[8]  (*Id.*, at Dkt. No. 225.)

11    During and after the January 18 meet-and-confer, Fractus represented that it had notified

12  the carrier Defendants of the newly accused antennas in November 2018, but Amphenol has been

13  unable to verify that representation with the carrier Defendants.[9]  (*Id.* at ¶ 20.)  Fractus raised a

14  concern about purported "discrepancies" between the sales data provided by Amphenol and the

15  purchase data from the carrier Defendants.  (*Id.* at ¶ 21.)  Amphenol agreed to provide sample

16  invoice data to help resolve the issue, and did so shortly thereafter.  Fractus agreed to review the

17  contracts and pattern files already produced by Amphenol and report to Amphenol any specific

18  deficiencies, but did not do so.  (*Id.* at ¶ 22.)  At no point during the meet-and-confers did

19  Amphenol agree that venue for a motion to compel is proper in this District.  (*Id.* at ¶ 23.)

20    Shortly  after  the  January  24  meet-and-confer,  Amphenol  sent  a  letter  to  Fractus

21  memorializing the discussion and requesting that Fractus withdraw its requests.  (*Id.*, Ex. F.)

22

---

23  Amphenol's contracts with the carrier Defendants to see if the requested information was present there.  (*Id.* at ¶ 16.)

24  [7] Fractus only provided an incomplete "sample" of three charts to Amphenol *at Amphenol's insistence* after the parties' first meet-and-confer on January 18, 2019.  (*Id.* at ¶ 11.)

25  [8] The motion confirms that Fractus knows that the newly identified antennas were not "in the case"
26  as of January 9 or 11, and that Fractus requires leave of court to get those antennas into the case.

27  [9] Although Fractus may argue the delay in serving these new infringement charts is because these charts are based on confidential information it received during discovery, on their face, the infringement charts are "based on publicly available information" and contain excerpts of the
28  datasheets for the newly identified antennas.  (*Id.* at ¶ 11.)  These datasheets were not produced by Amphenol, and are generally available to the public.  (*Id.* at ¶ 11.)

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

7

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1   Other than confirming that it would not withdraw its requests, Fractus did not communicate further

2   with Amphenol regarding its requests prior to filing its motion to compel a month later on

3   February 25, 2019. (*Id.* at ¶ 25.)

4           **D.**    **Fractus Serves Three Additional Subpoenas**

5         On March 4, 2019, Fractus served two ***new*** subpoenas *duces tecum* on non-parties

6   Amphenol Corporation and Amphenol Antenna Solutions, demanding testimony and production

7   of technical, financial, and marketing documents for the revised antenna list. (*Id.*, Ex. G,

8   March 4, 2019 Subpoenas.) On March 8, 2019, Fractus served *yet another* subpoena on non-party

9   Amphenol Antenna Solutions, Inc. seeking the production of documents relating to (i) the external

10  and internal structures for each base station antenna listed, and (ii) each antenna element used in

11  each base station antenna. (*Id.*, Ex. H, March 8, 2019 Subpoena.) It is these three new subpoenas

12  that are the subject of the present motion to quash.

13  **III.**    **LEGAL STANDARD**

14          **A.**    **The Geographic Limits of Rule 45**

15        Pursuant to Rules 45(d)(2)(ii) and (c)(1)(A) of the Federal Rules of Civil Procedure, the

16  Court must quash a subpoena that either (i) "requires a person who is neither a party nor a party's

17  officer" to travel more than "100 miles from where that person resides, is employed, or regularly

18  transacts business in person," or (ii) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(ii),

19  (d)(3)(iv), and (c)(1)(A).

20          **B.**    **Discovery Against Non-parties**

21        The Federal Circuit has held that a district court can require a movant to seek discovery

22  from its party opponent before burdening a non-party with an ancillary proceeding. *Haworth, Inc.*

23  *v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (noting that "the need for discovery in

24  an ancillary proceeding is diminished when the information is available elsewhere.") (internal

25  quotation omitted).[10]  This Court, along with others within this Circuit, have held that "the word

26  'non-party' serves as a constant reminder of the reasons for the limitations that characterize

27  _____

28  [10]  The Federal Circuit has jurisdiction over appeals from ancillary proceedings where the underlying litigation is a patent suit. *Solarex Corp. v. Arco Solar, Inc.*, 870 F.2d 642, 643 (Fed. Cir. 1989).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

8

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1  'third-party' discovery." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citing
2  *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).

3        "While discovery is a valuable right and should not be unnecessarily restricted, the
4  'necessary' restriction may be broader when a non-party is the target of discovery." *Dart*, 649
5  F.2d at 649; *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424
6  (Fed. Cir. 1993) ("Although Rule 26(b) applies equally to discovery of non-parties, the fact of non-
7  party status may be considered by the court in weighing the burdens imposed in the
8  circumstances."). As such, courts routinely recognize that non-parties responding to Rule 45
9  subpoenas "are powerless to control the scope of litigation and discovery, and should not be forced
10  to subsidize an unreasonable share of the costs of a litigation to which they are not a party."
11  *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). "[C]oncern for
12  the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the
13  balance of competing needs" in a Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708,
14  717 (1st Cir. 1998). In fact, "a court may modify or quash a subpoena even for relevant
15  information if it finds that there is an undue burden on the non-party." *Gonzales*, 234 F.R.D. at
16  683.

17          **C.**    **Issuing Party's Duty to Avoid Undue Burden or Expense**

18        "A party or attorney responsible for issuing and serving a subpoena must take reasonable
19  steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R.
20  Civ. P. 45(d)(1). Courts must "enforce this duty and impose an appropriate sanction . . . on a party
21  or attorney who fails to comply." *Id.* This Court has held that it "is particularly concerned anytime
22  enforcement of a subpoena imposes an economic burden on a non-party." *Gonzales*, 234 F.R.D.
23  at 683. "In determining whether there is undue burden, courts typically 'balance[ ] the burden on
24  the recipient of the subpoena, the relevance of the information sought to the claims or defenses at
25  issue in the lawsuit, the scope or breadth of the discovery request, and the party's need for that
26  information.'" *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-CV-02107-RS (KAW),
27  2017 WL 6209309, at *5 (N.D. Cal. Dec. 8, 2017) (citing *Third Degree Films, Inc. v. Does 1-178*,
28  No. C 12-3858 EMC (MEJ), 2012 WL 12925674, at *2 (N.D. Cal. Dec. 6, 2012)). And, "if the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

9

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1  sought-after documents are not relevant, nor calculated to lead to the discovery of admissible

2  evidence, then any burden whatsoever imposed would be by definition 'undue.'"[11]  *Gonzales*,

3  234 F.R.D. at 680 (citing *Compaq Comput. Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-

4  36 (N.D. Cal. 1995)).

5       Further, although defined broadly, for the purposes of discovery, relevance is not without

6  "ultimate and necessary boundaries." *Gonzales*, 234 F.R.D. at 680. Rule 26 permits the Court to

7  limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be

8  obtained from some other source that is more convenient, less burdensome, or less expensive."

9  Fed. R. Civ. P. 26(a)(2)(C)(i); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir.

10  1993) (affirming order requiring party to seek discovery from its party opponent before burdening

11  the non-party with a subpoena).

12       Other courts have cited a party's failure to protect a non-party from undue expense as a

13  standalone basis to deny a non-party discovery, or to award fees and expenses to a non-party.

14  *See, e.g., ATLC, Ltd. v. Eastman Kodak Co.*, No. 6:06-CV-416-ORL-19KRS, 2006 WL 3422413,

15  at *2 (M.D. Fla. Nov. 28, 2006) (denying a motion to compel when the party seeking enforcement

16  did not demonstrate how it would compensate the third party or otherwise protect it from undue

17  expense); *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 CIV.6298(PKC), 2006 WL

18  2996645, at *3 (S.D.N.Y. Oct. 13, 2006) (awarding to non-party its fees and expenses incurred in

19  compliance with subpoena); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A

20  SR, 2013 WL 5652759, at *4 (W.D.N.Y. Oct. 15, 2013) (granting costs and fees incurred

21  responding to a subpoena where the party failed to take "reasonable steps to avoid imposing undue

22  burden or expense on a person subject to the subpoena").

23

24

25      [11]  "On a motion to quash a subpoena, the moving party has the burden of persuasion under

26  Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12-MC-80237 (CRB) NC, 2013 WL 4536808, at *4

27  (N.D. Cal. Aug. 22, 2013) (internal citation omitted); *see also Optimize Tech. Sols., LLC v. Staples, Inc.*, No. 14-MC-80095-LHK (HRL), 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) ("The

28  party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

IV.   **ARGUMENT**

      A.   **Fractus's Subpoenas Must Be Quashed Under FRCP 45(d)(3)(ii) Because Amphenol's Corporate Representatives Do Not Reside, Work, or Regularly Transact Business in the District**

The Northern District of California is an improper venue for Fractus's Subpoenas. The Court ***must*** quash or modify a subpoena if, among other things, it "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person," or if it subjects a person to undue burden. *Fujikura Ltd. v. Finisar Corp.*, No. 15-MC-80110-HRL (JSC), 2015 WL 5782351, at \*3 (N.D. Cal. Oct. 5, 2015) (citing Fed. R. Civ. P. 45(d)(3)(ii), (iv)).

When evaluating whether a subpoena against an organization must be quashed under Rule 45(d)(3)(ii) and/or (iv), courts evaluate whether the individuals designated by the organization meet the geographical limitations:

> A review of the plain text of Rule 45 indicates that the 'regularly transacts business' requirement focuses on the *person* to be subpoenaed, and that the business activities of that *person's* employer have no bearing on that requirement. Rule 45 states that '*a person*' may be commanded to attend a trial if '*the person* ... regularly transacts business in person' within the relevant state/area.

*Greene v. Drobocky,* No. 1:12-CV-00078-TBR, 2014 WL 12726539, at \*2 (W.D. Ky. Aug. 27, 2014); *see also Perez v. Progenics Pharm., Inc.*, No. 10-CV-08278 (LAP), 2015 WL 4111551, at \*2 (S.D.N.Y. June 24, 2015) ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work.") (citing *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998)).

On its face, Fractus's Subpoenas request compliance in San Francisco, California, which is located within the Northern District of California.   (Frenkel Decl., Exs. G, H (identifying location of compliance as Kobre & Kim LLP in San Francisco, California).) But neither Amphenol Antenna Solutions, Inc. nor Amphenol Corporation are located in the Northern District of California.   Amphenol Antenna Solutions, Inc. is headquartered in ***Rockford, Illinois***, and Amphenol Corporation is headquartered in ***Wallingford, Connecticut***.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1    More importantly, none of the potential designees knowledgeable about the deposition

2  topics outlined in Fractus's Subpoenas either reside, work, or regularly transact business in the

3  Northern District of California. (Declaration of Justin Riek., at ¶¶ 3-4.) Fractus has required

4  compliance with its Subpoenas in the wrong district under Federal Rule of Civil

5  Procedure 45(d)(3)(ii), and this Court should quash Fractus's Subpoenas on that basis alone.

6    Further, with respect to Fractus's March 8 subpoena, while this subpoena does not include

7  a demand for testimony, this subpoena should similarly be quashed as violating Federal Rule of

8  Civil Procedure 45(d)(3)(ii). *See Fujikura Ltd.*, 2015 WL 5782351, at *3 ("For other discovery

9  besides depositions, a subpoena may command 'production of documents, electronically stored

10  information, or tangible things at a place within 100 miles of where the person resides, is

11  employed, or regularly transacts business in person[.]'"); *Nieman v. LinkedIn Corp.*, No. CV 12–

12  80258 PSG, 2013 WL 685203, at *2 (N.D. Cal. Feb. 25, 2013) ("[N]onparties cannot be required

13  to produce documents at a location more than 100 miles from their home or business."); *Miller*,

14  471 F. Supp. 2d at 121 ("[T]he limitation in Rule 45 unequivocally applies both to attending a

15  deposition to testify and to being required to produce documents at a distance more than 100 miles

16  from one's home. It draws no distinction whatsoever between being compelled to testify and being

17  compelled to produce documents at a certain place.").[12]

18    **B.    Fractus's Requests for Production Are Improper**

19    Fractus's cumulative and onerous requests are improper because they would impose

20  significant expense on a non-party in violation of the Federal Rules. "A party or attorney

21  responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue

22  burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts must

23  "enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to

24  _____

25  [12] For the March 8 document subpoena, while Fractus may argue that Amphenol has waived the territorial protections of Rule 45 by already choosing to produce documents in response to
26  Fractus's first set of subpoenas, Amphenol's voluntary compliance with these earlier subpoenas does not waive subsequent protection under Rule 45. *See, e.g., Miller*, 471 F. Supp. 2d at 121
27  ("That a witness came to the District voluntarily from more than 100 miles away on one occasion hardly means that he can be summoned again and against his will in violation of the 100-mile
28  restriction created by the rule."), Indeed, Amphenol's voluntary compliance confirms it responded reasonably to Fractus' initial subpoenas.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

12

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1    comply." *Id.*  This Court has held that it "is particularly concerned anytime enforcement of a

2    subpoena imposes an economic burden on a non-party." *Gonzales*, 234 F.R.D. at 683.  "Thus, a

3    court determining the propriety of a subpoena balances the relevance of the discovery sought, the

4    requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (citing

5    *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)).

6        Amphenol fully complied with the Subpoenas in good faith and with due diligence,

7    producing more than 37,000 documents. *See supra* Section II.A; Frenkel Decl. at ¶ 7.  For the

8    reasons that follow, Fractus is not entitled to the discovery requested in its March 4 and 8

9    Subpoenas, which amounts to a redo and re-production of Fractus's previously requested

10   discovery, because complying with these Subpoenas would impose undue burden and significant

11   expense on non-party Amphenol in violation of the Federal Rules.

12              1.    The Second Set of Document Requests and Deposition Topics Are
                     Irrelevant, Duplicative, Unreasonably Cumulative, and Unduly
13                   Burdensome

14       First, Fractus's subpoenas seek documents and testimony not relevant to any claim or

15   defense of any party.  Apparently, Fractus believes it is entitled to such documents and testimony.

16   Fractus is wrong.  Courts have routinely quashed subpoenas which include document requests and

17   deposition topics not relevant to the underlying case, as "[t]he relevance factor thus weighs heavily

18   in favor of quashing the subpoena." *Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309,

19   at *5; *see also Broadband iTV, Inc. v. Hawaiian Telecom*, No. 15-MC-80053 HRL, 2015 WL

20   1778432, at *2 (N.D. Cal. Apr. 17, 2015) (quashing a subpoena that requested documents "not

21   relevant to the claims or defenses of any party"); *see also Miller Marital Deduction Tr. by &*

22   *through Miller v. Estate of DuBois*, No. 2:16-CV-01883-SB, 2018 WL 1023200, slip op. at *3

23   (E.D. Cal. Feb. 21, 2018) (granting a motion to quash where "the subpoena seeks information that

24   is not relevant to any existing party's claim or defense.").

25       In *Free Stream Media Corp. v. Alphonso Inc.*, the court found that document requests and

26   deposition topics such as marketing agreements, other business agreements, information

27   exchanged between the non-party and Defendants, services exchanged between the non-party and

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13              NON-PARTIES AMPHENOL CORP. AND
                AMPHENOL ANTENNA SOLUTIONS, INC.'S
                MOTION TO QUASH SUBPOENAS

1   Defendants, and Defendants' use of the non-party's technology were not relevant to the case.
2   2017 WL 6209309, at *5. Similarly, Fractus's March 4 and 8 Subpoenas include irrelevant
3   document requests and deposition topics asking for marketing materials (Request No. 4, Topic No.
4   10), internal pricing and business methodologies (Topics 8 and 21), communications with
5   Defendants (Topic Nos. 13, 18, 19, and 23), Amphenol's internal organization structure (Topic
6   No. 17), and services between Amphenol and Defendants (Topic No. 20). (Frenkel Decl., Ex. G,
7   March 4, 2019 Subpoenas.) As these document requests and deposition topics are irrelevant to the
8   claims or defenses in the underlying case, "any burden whatsoever imposed would be by definition
9   'undue.'" *Gonzales*, 234 F.R.D. at 680 (citing *Compaq Computer Corp.*, 163 F.R.D. at 335–36).
10  And even if Fractus could argue some tenuous relevance, "a court may modify or quash a subpoena
11  even for relevant information if it finds that there is an undue burden on the non-party." *Gonzales*,
12  234 F.R.D. at 683.
13          Further, Fractus's request for the newly identified antennas is unreasonably cumulative and
14  unduly burdensome because Amphenol has already fully complied with Fractus's original
15  subpoenas in good faith and with due diligence. The newly identified antennas were first raised
16  to Amphenol in January 2019, months after Amphenol had already had completed its production
17  for scores of other antennas that were previously identified by Fractus. *See supra* Section II.B;
18  Frenkel Decl., Ex. E. Fractus failed to timely respond to Amphenol's objections to the Subpoena,
19  which were served in August 2018 and included an objection as to the scope of the accused
20  "multiband base station antenna." *See supra* Section II.A; Frenkel Decl., Ex. C, at Responses 1,
21  2. And Fractus also failed to notify Amphenol as soon as it realized that it intended to accuse the
22  newly identified antennas—which, by its own admission, occurred in November 2018. *See supra*
23  Section II.C; Frenkel Decl. at ¶ 20. For at least these reasons, this Court should quash Fractus's
24  Subpoenas, which target documents and testimony not relevant to any claim or defense in the
25  underlying litigation, and which would grant Fractus a near-complete rewrite of its accused
26  product list months after Amphenol, a non-party, already completed its production in compliance
27  with Fractus's original subpoenas.
28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

14

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1          2.      Fractus Has Imposed Significant Cost on Non-party Amphenol

2          Second, Fractus's onerous subpoenas have the effect of shifting the financial burden of

3   discovery onto non-party Amphenol. Fractus's actions are improper. When evaluating undue

4   burden, Courts take into consideration the cost of responding to a subpoena. *Free Stream Media*

5   *Corp.*, 2017 WL 6209309, at *6. (noting that the non-party had already incurred over $50,000 in

6   expenses responding to Plaintiff's subpoena, and would likely incur similar costs responding to

7   this new subpoena). Here, non-party Amphenol has spent months collecting and producing over

8   37,000 documents, and has further incurred additional legal fees having to respond to Fractus's

9   multiple requests, meet and confers, improper deficiency notices, and now three additional

10  subpoenas and a motion to compel. To date, non-party Amphenol has had its employees and

11  lawyers spend numerous hours, incurring tens of thousands of dollars in legal fees, to collect the

12  massive production to date, and will likely incur similar costs responding to these new subpoenas.

13  (Frenkel Decl., at ¶ 28.) This is a separate basis to quash. *See Free Stream Media*, 2017 WL

14  6209309, at *6 ("The undue burden test also requires that the Court be 'generally sensitive to the

15  costs imposed on third-parties.'").

16          3.      The Subpoenas Seek Information That Fractus Could More Easily Get
                    from Defendants
17

18          Third, Fractus apparently believes that it is entitled to the documents even though it could

19  get them from the Defendants in the underlying investigation. Fractus is wrong. Courts have

20  found that seeking documents from a non-party when Defendants would have the same documents

21  "only exacerbates the burdensome of the request." *Free Stream Media*, 2017 WL 6209309, at *6;

22  *see also Leader Techs., Inc. v. Facebook, Inc.*, No. C10-80028-MISC JW (HRL), 2010 US Dist.

23  LEXIS 24818, at *8–9 (N.D. Cal. March 2, 2010) (substantially quashing subpoena on former

24  employees of Facebook when Facebook's possession (and production) of such documents

25  rendered subpoena "cumulative and duplicative"); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D.

26  575, 577 (N.D. Cal. 2007) ("the vast majority of the discovery sought from [the non-party investor]

27  is discovery obtainable from a source more direct, convenient, and less burdensome namely, from

28  Defendants."); *Visto Corp. v. Smartner Info. Sys., Ltd.*, 06-80339 MISC RMW, 2007 WL 218771,

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

15

NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS

1    at *1–4 (N.D. Cal. Jan. 29, 2007) (quashing defendant's subpoena on third-party investors where

2    the sought-after information was available from the plaintiff).

3        Here, Fractus's March 4, 2019 Subpoenas seek testimony on a number of topics that are in

4    the possession of, and thus are more easily obtained from, Defendants, who are parties to the

5    underlying litigation.   For example, these Subpoenas include topics relating to: Amphenol's

6    communications with Defendants (*see, e.g.*, Topic Nos. 13, 18, 19, and 23); indemnification

7    obligations (Topic No. 12); and services between Amphenol and Defendants (Topic No. 20).  *See*

8    *supra* Section II.D; Frenkel Decl., Ex. G.  Such requests create a burden on non-party Amphenol

9    that outweighs the likely benefit of the subpoena absent a "*convincing* showing that the subpoena

10   is likely to yield *unique and material evidence* from the third party."  *Nidec Corp.* 249 F.R.D. at

11   577.  Fractus cannot make a "convincing showing" that its subpoena will produce "unique and

12   material evidence" from Amphenol.  And absent that showing, Fractus's Subpoenas should be

13   quashed.

14   **C.    Fractus Has Failed to Take Reasonable Steps to Avoid Imposing
         Undue Burden and Expense on Non-party Amphenol**

15       Fractus's Subpoenas should be quashed because Fractus has failed to take reasonable steps

16   to avoid imposing undue burden and expense on non-party Amphenol, as required by the

17   Federal Rules.  "A party or attorney responsible for issuing and serving a subpoena must take

18   reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

19   Fed. R. Civ. P. 45(d)(1).  Courts must enforce this duty with appropriate sanctions, and protect

20   non-parties from "significant expense" resulting from compliance.  Fed. R. Civ. P. 45(d)(1)–(2).

21   Consistent with these provisions, this Court has denied discovery requests where the requesting

22   party failed, through its own lack of diligence, to avoid imposing undue burden on a non-party.

23   *See ASUS Computer Int'l v. Micron Tech. Inc.*, Case No. 14-CV-00275 JST (NC), 2014 WL

24   12625461, at *4 (N.D. Cal. April. 21, 2014) (denying motion to compel and granting costs to

25   non-party where the plaintiff had not adequately reviewed previously produced discovery to ensure

26   the discovery it now sought from the non-party was already in its possession, and finding that

27   "[t]his lack of diligence before burdening a non-party with discovery requests is not permissible

28   under the Federal Rules").

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                   NON-PARTIES AMPHENOL CORP. AND
                     AMPHENOL ANTENNA SOLUTIONS, INC.'S
                     MOTION TO QUASH SUBPOENAS

Other courts have cited this provision of the Federal Rules as a *standalone basis to deny non-party discovery* (or even to award fees and expenses to a non-party for the cost of its burdensome response).[13]   *See, e.g., ATLC*, 2006 WL 3422413, at *2 (denying a motion to compel when the party seeking enforcement did not demonstrate how it would compensate the third party or otherwise protect it from "undue burden or expense") (citing prior version of Fed. R. Civ. P. 45(d)(1))

Amphenol has already complied with Fractus's original Subpoenas in good faith and with due diligence, producing tens of thousands of responsive documents. *See supra* Section II.a; Frenkel Decl. at ¶ 7. Meanwhile, Fractus has failed to take reasonable steps to avoid imposing undue burden or expense on Amphenol. In particular, Fractus initially provided a list of nearly 100 accused antennas that Amphenol used to collect and produce tens of thousands of responsive technical documents, but failed to timely notify Amphenol when it identified an almost entirely different set of antennas it intended to accuse. *See supra* Section II.C; Frenkel Decl. at ¶ 20. Fractus also failed to timely respond to Amphenol's objections to the Subpoena, and only accepted Amphenol's offer to meet and confer two months after Amphenol had already completed its production. *See supra* Section II.C; Frenkel Decl. at ¶ 6. Fractus failed to review certain documents in Amphenol's production to narrow or modify its requests, despite promising to do so on the parties' meet-and-confers. *See supra* Section II.C; Frenkel Decl. at ¶ 17. In correspondence following the first meet-and-confer, Amphenol put Fractus on notice that Fractus was not in compliance with its obligations under Federal Rule of Civil Procedure 45(d)(1), but Fractus chose to file a motion to compel and serve *three* additional subpoenas instead of narrowing or withdrawing its requests. *See supra* Section II.C; Frenkel Decl., Ex. F. And Fractus served these additional subpoenas and filed its motion to compel prior to obtaining leave from the Texas court

---

[13] Although Amphenol is not seeking its fees here, many courts have awarded fees in similar circumstances.   *See, e.g., Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 CIV.6298(PKC), 2006 WL 2996645, at *3 (S.D.N.Y. Oct. 13, 2006) (awarding to non-party 50% of its fees and 100% of its expenses incurred in compliance with subpoena, even where no breach of duty under Rule 45) (citing prior version of Fed. R. Civ. P. 45(d)(1)-(2)); *Zoological Soc.*, 2013 WL 5652759, at *4 (granting costs and fees incurred responding to a subpoena where the party failed to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

1    to amend its infringement contentions. *See supra* Section II.C.

2        For at least these reasons, Fractus has already imposed significant expenses on Amphenol

3    through its own dereliction of duty under the Federal Rules.  This Court should deny Fractus any

4    further opportunity to impose significant expenses on Amphenol.

5    **V.**     **CONCLUSION**

6        Months after Fractus knew of its revised accused product list, and months after Amphenol

7    completed its production of thousands of pages of documents in response to Fractus's original

8    Subpoenas, Fractus has served additional subpoenas in the wrong district.  These Subpoenas are

9    duplicative, burdensome, and legally improper.  For these and other foregoing reasons, the

10    non-parties respectfully request that the Court quash Fractus's Subpoenas in their entirety.  Further,

11    the Court should award the fees and expenses associated with responding to these Subpoenas to

12    Amphenol.  In the alternative, should this Court not quash Fractus's Subpoenas, the Court should

13    award fees and expenses to Amphenol associated with such further production.

14    Dated: March 22, 2019            Respectfully submitted,

16                       LATHAM & WATKINS LLP

17                       Richard G. Frenkel

19                       *Attorneys for Non-Parties Amphenol*
*Corporation and Amphenol Antenna Solutions,*
*Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18     NON-PARTIES AMPHENOL CORP. AND
AMPHENOL ANTENNA SOLUTIONS, INC.'S
MOTION TO QUASH SUBPOENAS